## COOK v. THE NEW YORK CENTRAL RAILROAD COMPANY.

### September, 1867.

To justify a nonsuit in an action for damages caused by negligence, either the question whether defendants were guilty of negligence, or the question whether the injured person was free from negligence, must be answered, by the evidence, against the plaintiff, so clearly that there is no room for doubt. All disputed facts must be conceded to the plaintiff; and the court of appeals will not sustain such a nonsuit on the ground that evidence in favor of the plaintiff, which would have justified a verdict, was outweighed by conflicting evidence.[*]

It is well settled that a railroad company is bound to manage their road and machinery with the utmost care and vigilance;[†] and that the freedom from negligence which is required of a plaintiff involves only that ordinary prudence and attention which sensible men are accustomed to give in similar cases.[‡]

Anna M. Cook, as administratrix, &c., of her deceased husband, John F. Cook, sued defendants in the supreme court, under the statute, to recover damages, resulting from defendant's negligently running their engine against the decedent's wagon at a crossing at the corner of Hamburg and Carrol-streets, in the

---

[*] See Scofield v. Hernandez, 47 N. Y. 313; Hackford v. N. Y. Central R. R. Co., 13 Abb. Pr. N. S. 18; Lunt v. Railway Co., 1 Law Rep. Q. B. 277; Beebee v. Railway Co., 18 Com. B. N. S. 584; Stupley v. Railway Co., 1 Law Rep. Ex. 21; Stubley v. Railway Co., 1 Law Rep. 13; Hegan v. Eighth-ave. R. R. Co., 15 N. Y. 383; Ernst v. Hudson R. R. R. Co., 35 Id. 38; McGrath v. Hudson R. R. R. Co., 32 Barb. 147; Malloy v. N. Y. Central R. R. Co., 58 Id. 184; Mulhado v. Brooklyn City R. R. Co., 30 N. Y. 373; Brown v. N. Y. Central R. R. Co., 34 Id. 404; Creed v. Hartman, 29 Id. 592; Keller v. N. Y. Central R. R. Co., 24 How. Pr. 177; Mentz v. Second-ave. R. R. Co., 2 Robt. 357; and affirmed in court of appeals, and reported in this series; Ireland v. O. H. & S. Plank R. Co., 13 N. Y. 533; Bernhard v. Rens. & Sar. R. R. Co., p. 131 of this vol.

[†] Compare Caldwell v. N. J. Steamboat Co., 47 N. Y. 282, and cases cited.; McPadden v. N. Y. Central R. R. Co., 44 Id. 478; Tinney v. Boston & Alb. R. R. Co., 62 Barb. 218; Beisiegel v. N. Y. Central R. R. Co., 40 N. Y. 9, dissenting opinion of MASON, J.

[‡] Compare Bernhard v. Rens. & Saratoga R. R. Co., p. 131 of this vol., and cases cited.

city of Buffalo. The decedent and a fellow laborer were returning in a wagon according to his usage from his work to his home, about three miles distant, his route leading him through Hamburg-street and across the track of the railroad, which passed diagonally through the junction of Hamburg and Carrol-streets. The defendant's train, at the time of the accident, was backing in, and there was a good deal of noise and confusion at the place and a great many people around there.

The only question raised by this appeal was, whether upon the evidence (the material parts of which are stated in the opinion), the judge was justified in nonsuiting the plaintiff at the trial.

*The supreme court,* at general term held, that whatever may have been the former rule, it must be deemed now well established, that the judge, upon the close of the evidence, may and ought to nonsuit the plaintiff, or direct a verdict against him, whenever satisfied that a verdict in his favor would be so clearly against the evidence that it could not be permitted to stand; and that the judge did not err in the application of this rule in the present case. They accordingly affirmed the nonsuit. Plaintiff appealed.

*John C. Strong,* for plaintiff, appellant.

*A. P. Laning,* for defendants, respondents.

HUNT, J.—Two questions were presented upon this trial: First, were the defendants guilty of negligence on the occasion in question; secondly, was the deceased free from negligence. To justify a nonsuit, one of these questions must be held against the plaintiff, and so clearly that there is no room for doubt. On a question for nonsuit, all disputed facts are to be decided in favor of the plaintiff, and all presumptions and inferences which he had a right to ask from the jury are to be conceded to him. As we have frequently and recently held, we do not weigh or measure the evidence. That is the province of the jury. If there is evidence in favor of the plaintiff's claim, on which the jury would have been justified in giving her a verdict, it is not for the court to say whether it has been over-

28

balanced or outweighed by the conflicting testimony. Solmes v. Rutgers Fire Ins. Co.,* and railroad cases cited, *post.*

It appeared in evidence that the train approached the crossing in question by a curve, and that the view, in the direction from which it came, was cut off by houses and by a high fence. It appeared that the deceased and his companion, who is now also dead, were sober, steady men, and that they were sober on the evening in question. They approached the crossing slowly, in the dusk of the evening; and, as it appeared by the evidence of five witnesses, there was no flag-man visible at the station, and no warning was given that it was not safe to cross, although a flag-man was regularly stationed at that point, for the purpose of preventing the passage when it was unsafe to cross. It appeared by the evidence of four witnesses that no bell was rung upon the approaching train, and that no whistle was sounded from it, until the collision took place. An ordinance of the city of Buffalo was introduced in evidence, by which trains were prohibited from passing this point at a rate of speed greater than that of six miles per hour. It was proved by several witnesses that this train was crossing at a rate of speed equal to eight or ten miles per hour.

The defendants, on the other hand, proved by the fireman of the train that the train was crossing at a speed not exceeding five miles per hour, that the whistle was blown twice, and that the bell was rung as they crossed the street. He further testified that Scanlin was the regular flag-man at this point, but that on this occasion one Sullivan stood near the track, and about ten or twelve feet from the shanty, on Hamburg-street. Another fireman testified to the same facts, except that he testified that he did not see a flag-man there; that he did see a cripple there, but that he did not know Sullivan. The first of these firemen stated that he remembered that they rang the bell at the crossing, because they always did ring the bell at such a crossing. The other testified that he fixed the rate of speed, at which they crossed, from the fact that they always came slowly around the curve, and he fixed it on this occasion from that usual way.

---

* Reported in this series.

The conductor was also sworn, and he testified that he discovered the wagon on the track, and whistled or signalled to brake down. "The man was stopped there, but he started again, and I immediately hallooed to him to hold on, and then I ran to the second car, and I had not more than got there than they blew the second whistle. . . . The men came to a full stop when they saw the train, but they jerked the line again and started; and as quick as I saw them I hallooed, because I saw they could not cross safely; I hallooed to them to hold on, and gave a signal to brake and stop the engine. With reference to Hamburg-street, the men were in the middle of the road; I think the forepart of the horse was pretty near on the southern part of the track; . . . . the cars are thirty feet in length." On his cross-examination he said: "When I first saw them they were driving on the track, and had stopped; I was within four cars length of Hamburg-street; when I first saw them they were driving up to the track, and I told them to stop; . . . . I was four cars length from them; they stopped on the south track; the wagon was in the center of that track when I first noticed them."

Daniel Sullivan testified that Scanlin was the flag-man at this point, and that at his request he held his flag for him, when he went to his supper, on the occasion in question. That he saw the horse and wagon coming up the street, and saw the train approaching, and waved his flag under the horse's nose; stopped the wagon for about two minutes; that the man said the horse should go through, whipped him up, and he went on to the track. Thomas Smith and Rosina Smith corroborated Sullivan in the most important portions of his testimony. Other witnesses were called to discredit Sullivan's evidence, one of whom testified that Sullivan had said to her that he knew nothing about the accident, that he was in the shanty, and that he knew nothing about it.

The rule is quite settled, that in the management of their road and machinery, a railroad corporation is bound to use the utmost care and vigilance to avoid the dangers attending a collision. It is equally well settled that the freedom from negligence which is required of a plaintiff, involves only that ordinary prudence and attention which sensible men are ac-

customed to give in similar cases. Perfect composure in danger, entire self-possession, and an accurate decision upon the wisest course to be adopted in the emergency, are not required. The recent elaborate discussions in Ernst v. Hudson River R. R. Co., 35 *N. Y.* 9; Beisiegel v. N. Y. Central R. R. Co., 34 *Id.* 622; Mackay v. Same, 35 *Id.* 75; Brown v. Same, 34 *Id.* 404, 405, render it unnecessary to examine either the authorities or the principles upon which this case should be decided. Upon the authority of these cases, the questions upon each of the points should have been submitted to the jury, and their decision would have been conclusive. Indeed, upon the evidence of the defendant's conductor himself, I think it was a case for the jury. It was for them to decide the conflicting evidence before them as to the defendant's negligence. It was for them also to draw the conclusions whether the plaintiff was in fault, whether and how he could have escaped the imminent dangers that pressed him, and whether he heard or understood the directions or signals that were given to him.

I think there should be a new trial, with costs to abide the event.

DAVIES, Ch. J., and GROVER, J., dissented.

All the other judges concurred.

Judgment reversed and new trial ordered, costs to abide event.